Ladies and gentlemen, please rise. This court is now in session. Please be seated. Would the clerk call the next case, please? 3.10524, People of the State of Illinois, appellate by Nicholas Atwood, v. Brian Shabar, Don Redmond, appellate by Bruce Cartman. Thank you. Mr. Cartman. Oh, I'm sorry. Mr. Atwood. I had to think about it too. May it please the court. Good morning, Your Honors. Good morning, Mr. Cartman. My name is Nicholas Atwood, and I represent the people of the state of Illinois in this matter. This case is not about whether the odor of burnt cannabis on its own establishes probable cause. This case is about whether the trial court committed a series of errors when it failed to consider the totality of the circumstances prior to issuing its ruling. In this case, the court looked at facts in isolation. The court speculated as to facts that were not contained in the evidence presented at the hearing. And the court finally made unreasonable inferences based off the evidence that was established. The evidence presented at the hearing indicates that in September of 2020, Trooper Combs initiated a valid traffic stop of the defendant's vehicle on Interstate 80 in Henry County. Upon approaching the defendant's vehicle, he asked the defendant to roll down the window. And upon doing so, the trooper testified that he detected the very strong odor of cannabis. Not the faint odor of cannabis, not the lingering odor of cannabis, not the stale odor of burnt cannabis. The very strong odor of burnt cannabis. The officer then testified that he asked the defendant for his license and registration, but the defendant had no license or registration. He had the defendant step out of the vehicle, he performed a brief pat-down, and he detained the defendant in his squad car while he attempted to ascertain the defendant's identification, where he was traveling to, and other facts related to the traffic stop. At what point in there, Mr. Atwood, was he arrested? It's not 100% clear from the record. The officer indicated, I think he even used the word detained, he briefly detained him while he went to use his computer in his squad car to determine the defendant's identity and to ask him questions about his itinerary, his travel plans, which the officer said were standard. When did he give him the Miranda warning? He Mirandized the defendant before he asked these questions inside the squad car, but he did not indicate that he was arresting the defendant, merely that he was detaining the defendant, so I believe he provided the Miranda rights as a prophylactic and had not yet determined that he was going to arrest the defendant or search the vehicle. While inside the vehicle, the officer testified that the defendant was evasive to his questions and he found it difficult to obtain a straight answer from the defendant. He also asked the defendant point blank if the defendant had been using cannabis in the vehicle, and the defendant denied that he had. While performing this investigation, he was able to obtain the defendant's identity, but he also learned that the defendant was traveling in a vehicle that was rented by a third party. That will become important later. And so, ultimately, after eliciting these facts, the very strong odor of burnt cannabis, traveling on Interstate 80, which the officer testified in his training experience is a known drug corridor that he's made hundreds of traffic stops on, too many to count of which included controlled substances, evasive answers and an outright denial that he'd been smoking cannabis, as well as a third party rental, the officer then searched the vehicle after these questions had been answered, and he ultimately found approximately one gram of cannabis in the vehicle. He testified later that he found evidence that something had been lit in the vehicle, but it doesn't appear that he had that information prior to performing the search. That was something that he located after he began the search. And so, if we're going to consider these facts, let's think about the totality of these circumstances. It's a flexible standard what is known to a reasonable person at that time. You don't need to prove something beyond a reasonable doubt. You don't even need to prove beyond the preponderance of the evidence. You just have to have some common sense application of what are these factors indicating to the officer. So, first, the very strong odor of burnt cannabis. The officer testified this made him think, one, that the defendant may have been smoking cannabis inside the vehicle, and, two, that it's possible the defendant may have been involved in some kind of trafficking, maybe had cannabis inside the vehicle. When did he ascertain, Mr. Atwood, that he was not under the influence? When he got him out of the car or when he had him in the squad car? I believe, to me, it's not 100% clear. After he's out of the squad car, he basically stated that he never detected that the defendant had, you know, bloodshot eyes or some other indicator that from his training would say, okay, this is a person that's under the influence. So, that's not a fact that we had. He didn't notice it immediately. One thing that he did testify to that I think is curious is when the defendant was inside the vehicle, the defendant's person inside the squad car, the defendant's person did not smell like cannabis. He testified that when he removed the defendant from the vehicle, he could still smell the burnt cannabis in the vehicle, but he did not detect it later on. So, we have these facts. Burnt cannabis is still a factor to consider, even after this Court's ruling in People v. Strickland, which I can discuss more later if this Court requires. So, we have a very strong odor of burnt cannabis. We have a defendant who is being evasive and questioning, and what that tells us is in the Supreme Court decision in People v. Timpson, when a defendant is providing evasive answers, that is a pertinent factor for an officer to consider in a probable cause analysis. Is it pertinent after Miranda warnings have been given? I don't understand how a Miranda warning would change whether or not that's a pertinent factor. How about you have the right to remain silent? He did have the right to remain silent, but what we know is the defendant did not exercise that right to remain silent. And when I talk about the Court's conclusion, that's a fact the Court got completely wrong. The officer testified. He asked the defendant point blank, were you smoking? And the defendant responded that he had not. We also know the defendant did ultimately provide other information to the officer because the officer was able to ascertain his identity. He was able to learn about the rental agreement that was taken out by a third party, which is purportedly the defendant's girlfriend. So even if the defendant was Mirandized, he still, and we're not clear exactly when these questions came in the sequence, he still elected to make statements regardless of whether he was Mirandized or not Mirandized. So I think it's a pertinent factor in that even with that right, the defendant still apparently chose to make statements, and that was a fact that was known to the officer ultimately before he decided to search the vehicle, which is the second part of that equation. He knows this fact before the vehicle's being searched. With regard to that third party rental, this Court and people v. Varnaskis specifically stated that third party rentals are routinely used in drug trafficking on Interstate 80, and Varnaskis also held that Interstate 80 is a known drug trafficking corridor. There are several other cases this Court is well aware of that Interstate 80 is used for that purpose. What is the significance of that? The trial court wrongly found that there was no significance, but that's where part of the trial court's erroneous analysis occurred. The court looked at that factor in isolation. On Interstate 80 by itself, not suspicious at all. Maybe even just smoking cannabis and traveling on Interstate 80, possibly not suspicious, but evasive answers to questions, the very strong odor of burnt cannabis, which indicates recent use as opposed to a faint odor or a lingering odor, in addition to a vehicle that's rented by a third party, by an officer who's testifying that I've made many stops on this road and I frequently find people who are engaged in cannabis trafficking on this thoroughfare. So on its own, not a big deal, but with these four other facts, which the trial court found in the officer's testimony to be 100 percent honest, these are the totality of the circumstances that that officer's acting on. You can't look at them in isolation. I just have a couple of questions about that. I mean, Interstate 80 goes from New Jersey to California. Correct. Millions of people drive on it. Are all of those people under suspicion of drug trafficking? Absolutely not. Absolutely not, Your Honor, because just driving on a particular road does not make that road a thoroughfare for drug trafficking. But that's why you look at the totality of the circumstances. People driving on a road, that's an isolated circumstance. People who have been stopped that have the odor of drugs in their vehicle that were recently consumed, they don't enjoy that same anonymity. They're now a natural progression is occurring that begins at the very strong odor of cannabis that picks up with no identification or registration, that follows through to evasive answers to questions, which Tinson said is indicative of guilty behavior and a pertinent factor in a probable cause analysis. There are building blocks each step of the way that are making this case more and more likely that there's going to be some evidence of criminal activity. It doesn't have to be proven beyond a reasonable doubt. It doesn't even have to be a preponderance of the evidence. Does it have to make sense? It doesn't. You're talking about Des Moines, Iowa is a drug hub? I imagine that's just because it's a major... Between Des Moines and Chicago, there's not a lot of major cities. Between Des Moines and Denver, there's not a lot of major cities. I don't think that it would be important to put a lot of stock on he's going from Des Moines to Chicago. That's innocuous until you detect the very strong odor of cannabis, you have a defendant who's being evasive, who has no identification, who's traveling in a vehicle that's rented by a third party. That's why we perform the totality of the circumstances analysis because any one of these on their own, perhaps you could invent an innocent explanation. That's exactly what the trial court did. With regard to the evasive answers, the court said, well, perhaps he's exercising his right to remain silent, but we know he wasn't exercising his right to remain silent because he made statements. So that wasn't a reasonable inference. With regard to the burnt cannabis emitting from the vehicle not being suspicious, well, again, maybe on its own that might, in a post-legalized cannabis world, not generate probable cause. But when you consider it in regards to the evasive answers, the very strong nature of the odor to a third party rental and the fact that you're on a drug corridor, what would a reasonable person applying common sense think? They're going to think, wow, that's a really strong odor of cannabis. I bet that person recently smoked it. Having come from Des Moines, we know he's only three hours from where he left. He's approximately halfway to his destination, maybe a little further. A reasonable person would think this is recently smoked cannabis. And when the defendant sits in the back seat of the squad car and doesn't have the smell of cannabis on him, one would think the cannabis was smoked in this vehicle, but there's no one else. It's just the defendant who's in that vehicle. Why wouldn't it be on the defendant if he smoked it? Well, that's a possible, you know, perhaps the window was open when he was using the cannabis. It's not 100% clear. What's interesting about that question is that the trial court, again, tried to manufacture an innocent explanation for the odor of cannabis, and he said, well, perhaps it was just on the defendant's clothes from before. But that runs directly contrary to the officer's testimony. He said he didn't smell like cannabis. The cannabis was coming from the vehicle. This is, again, you know, we don't have to be 100% right in every reasonable inference that an officer is making when they're coming to that probable cause determination. It's a flexible standard. That's the word that case law uses. So when we're looking at this common sense, flexible standard, low burden of proof, all of the circumstances taken together, not individually isolated where we could maybe speculate to innocent answers, that's where we see that this officer had probable cause to search the vehicle, which he ultimately did find a small amount of cannabis. Another thing that the court focused on was the fact that the defendant pulled over right away. This wasn't a case where perhaps the defendant drove around trying to dispose of drugs or took a long time to pull over. But the fact in this case there was no paraphernalia that was found, there was no evidence anything was thrown from the vehicle, perhaps the defendant had been smoking a joint and he swallowed it. Perhaps that is what the officer found later in the vehicle when he said there was evidence of something that had been burnt. Perhaps it was a roach. We don't know. We can always speculate as to other possibilities, but when we look at what was there, a very strong odor indicates recent use. The officer testified it is illegal, even though cannabis is legal, it's illegal to operate a vehicle under the influence of cannabis, and he believed that that's what was happening in this case. Did the officer say that it was the smell that made him suspicious? The officer testified a large portion of his decision to search the vehicle was based on the strong odor of cannabis, the very strong odor, which I agree that would be a very large portion of your analysis, and then you take in these other factors into account, especially the evasiveness. The defendant clearly was indicating he had something to hide because he was being evasive. He was not providing straight answers. He told the officer he had not been smoking cannabis when the very strong odor would clearly indicate cannabis had been burnt in the car recently. Given these facts, some are stronger than others. The very strong odor of cannabis is obviously the strongest evidence that we have in this case, and it's a proper factor to consider. Mr. Edmund, part of what troubles me is your characterization of what are facts. It seems to me when you talk about evasiveness, that's a judgment, isn't it? And it's subjective. Whether or not the answer he's been given is, quote, evasive or direct, that's a judgment by the officer, isn't it? I agree. All right. And whether or not interstate 80 is a drug corridor, that's a judgment too, isn't it? It's not a fact. It is a judgment, but it's also a fact that this court has considered to be a fact in support of probable cause many, many times in cases. So in the totality of circumstances that you're talking about here that you want us to review, it seems to me that what you have are a whole series of judgments that were made by the officer at the scene and really very few facts. The only really objective fact, if we can call it that, and in my view that's even somewhat subjective, is his sense of smell. Well, the officer is trained to make these observations. That's part of his everyday training, to observe human demeanor when asking questions, to detect the odor. The officer testified. Your Honors, I see that I'm out of time. Can I briefly conclude this answer? Yes. The officer testified specifically as part of his training. He was presented raw and burnt cannabis in their forms, and he tested those as a state trooper. In addition to that, the trial court specifically stated that he found the officer was 100% honest. So given the trial court's statements, these are established facts of this case. He believed the officer was able to make those determinations. He believed the officer's assessment of the defendant's demeanor, as well as of the odor, though the court did downplay the very strong odor into just a smell when he was using his written ruling. And with that, Your Honors, I would ask this Court to affirm the defendant's conviction, and I yield my time. Thank you. Mr. Carvin. Thank you, Your Honor. May it please the Court, Mr. Atwood. The first thing I want to remind the Court of, and although I'm quite sure the Court is aware of it, is the standard of review on factual issues in a motion to suppress case. This Court reviews those on a manifest weight of the evidence standard, meaning no reasonable person would have agreed with Judge Dalton's factual assessments. And Judge Dalton did not make the factual assessments that Mr. Atwood says he made. You can find trooper crumbs credible, but still at the same time not believe that the things he said amount to factors that would cause a reasonable person to believe that criminal activity is afoot. For example, as Justice McDade pointed out, this whole interstate 80 thing, and I kind of made fun of it a little bit in my brief, because I've heard from police officers for years that if the car is coming from California or it's coming from Colorado or it's coming from Arizona or Oregon, then we're going to take a closer look at it. But Des Moines, Iowa? I have never in my 21 years of criminal defense heard any police officer ever testify that Des Moines is a known drug trafficking corridor. That's first for me. And Judge Dalton, a little personal insight, was a criminal defense attorney before he was appointed to the bench, and he's probably done more of these cases than I have, and he did not put any stock in that testimony, nor did he put any stock in this so-called conclusion of evasiveness by trooper Combs. Judge Dalton went through this in some detail about what Mr. Redman said about where he was coming from and where he was going, not that that's really any part of a traffic stop, but officers tend to make it part of a traffic stop. And his explanation was perfectly reasonable. I live in Chicago, but I'm staying with my girlfriend in Des Moines because there's COVID. There's much more COVID in Chicago than there is in Des Moines, and I don't remember exactly, but I think there was some testimony about COVID being part of his life prior to his trip from Des Moines or trip to Des Moines. The second thing I want to point out is that Mr. Atwood argues that this is a low burden of proof. No, it's not. No, it's not. The standard is what would a reasonable police officer conclude under these circumstances, whether it was probable that criminal activities were put, as I argued in my brief many times, probable is not possible. There are lots of possible things that could be happening here, but probable? The only thing that's probable is the smell of cannabis, and as Justice Astority points out, that's not all that probable either. That's still subjective. It's entirely subjective, whether it's faint odor, strong odor, moderate odor. Who knows? I know that the judge didn't put much stock in it, and, again, that's the critical thing for this court to conclude when reviewing the factual conclusions of the trial court. It isn't something that no reasonable judge would have concluded. We also, Mr. Atwood seems to dance around the idea, dance around the factual determination by the trooper that there was no sign of impairment. He did not have him do field sobriety tests. He did not do any of the things normally done when you sense that a driver is impaired, and as this court probably knows, I'm sure this court knows, I'm certain Justice Hedl knows as a former prosecutor, any amount of drugs in your system back in 2020, any amount of drugs in your system would qualify you for a DUI, and we know that Trooper Combs had his antenna up here. He stopped this vehicle for going 73 miles an hour in a 70 zone and having a license plate that was slightly askew. Reasonable people can draw very different inferences about what that means, about why this particular vehicle was stopped. I have my own suspicions, and I suspect the court does as well. Again, the next factor I want to talk about is the fact that it's a rental vehicle. I don't recall Trooper Combs ever testifying that he considered that a factor in his probable cause analysis, and I know from Judge Dalton's opinion he didn't disconsider it at all. People drive vehicles that are rented for lots of reasons. Yes, a lot of people involved in trafficking and drugs use rental cars, but so do people involved in family vacations. So do people whose cars are temporarily incapacitated. There are lots of reasons to be driving a rental vehicle. Mr. Kerman, when was your client arrested? After the search, he was formally arrested, but he was Mirandized before, and I understand that people do speak to police when they shouldn't, but they do. Being stopped for a traffic offense, when there is probably some odor of cannabis in your vehicle, whether it's from somebody's clothes or from somebody who was driving it before, I don't know. But that can be an intimidating situation, and people talk regardless of whether they've been warned that it's best for them to remain silent. It's one of the curses of criminal defense law is we don't get to our clients oftentimes until after they've talked to the police. It just happens that way, unfortunately. This is a case—I want to talk a little bit about stribbling for a second, because stribbling does the one thing that we who are preparing this case were concerned about, which is whether a lower court or an intermediate court should be telling the Supreme Court that its precedents are no longer valid. Well, I think that's what happened in stribbling, and I expect that's what will happen here, that Stout and Hill had their place when marijuana was either criminal to possess it or it was unlawful to possess it after the decriminalization. That's how the law works. Certain laws are made based upon—excuse me, Supreme Court decisions are issued based upon the facts and the law as they existed at the time of the decision, and then the legislature deems that the policy of the state is now different. You may now, in many circumstances, lawfully possess and smoke cannabis. It is not an unusual thing anymore. It is now more like alcohol, which the courts have ruled, you smell alcohol in a car, that does not give you probable cause to search the vehicle. You have to have more. And that's what takes me to my ultimate conclusion in this case, is that Judge Baldwin went out of his way, in his opinion, to say there is no more here. There's no evidence that he's impaired, so there's no evidence that he's smoking recently, as Mr. Atwood would like to suggest. This whole thing about Interstate 80 being a drug corridor is, again, I'm trying to maintain my poise when it comes to that, but it's just something state police officers say when they're not sure about their law, whether their search is lawful. Oh, I-80 is a known drug corridor. Yeah, if you're coming from California, it might be a drug corridor. If you're coming from Arizona, it might be a drug corridor. But it's not a drug corridor if you're traveling between Des Moines and Chicago. By the way, whether there are big cities between Des Moines and Chicago is a factual matter. As a Quad City native, there's over 200,000 people in a very small area in the Quad City, so there is definitely a city between Des Moines and Chicago. And finally, the confusion, his being evasive about his travel plans. He wasn't being evasive. The trooper just didn't-I don't think the trooper understood what his travel plans were, and that's what Judge Dalton basically said. He said there's nothing that raises the possibility of criminal activity about driving between- about living in Chicago but staying momentarily in Des Moines because of fear of COVID-19. That's not evasiveness. That's reasonable, and that's what we're supposed to be looking at here is what would a reasonable police officer confronted with these facts believe? And Judge Dalton made the factual determinations that there's nothing else other than the plain smell of cannabis. And I tried as hard as I could to pinch trooper Combs down to it, and he was-speaking of evasive-was slightly evasive himself when he said the main reason that I believe that I had a probable cause of search of vehicle was the strong odor of cannabis. I really think it was the only reason. Well, it's the only articulated reason that makes any sense. I think there's other reasons that were not articulated, but that's not part of the record in this case. So for those reasons, Your Honor, I would ask the Court to perform the judgment at the Circuit Court of Henry County. Mr. Carman, you and a few of you represent Mr. Redman. At the trial level, was there an audio tape or video tape of this stop? I'm trying to remember. I'm pretty sure there was. Is it not part of the record in this case? I'm not suggesting that. I have not gone that far into the record to know that. I seem to recall having watched the video. So we can hear exactly what the questions were, what the answers were. If, again, having done a few of these, sometimes the audio doesn't match up with the video, but we can only hope. But that is your recollection? That's my recollection as I'm standing here not knowing for sure. I don't feel as bad. Are there any other questions? No other questions. Thank you. Thank you, Mr. Carman. Mr. Atwood, any rebuttal? Thank you, Your Honors. I can appreciate that counsel litigated this case in the trial court, but many of the things counsel are saying simply just appear to be his opinion of what he observed. For example, the trooper's responses to questions. The trial court found the trooper was 100% honest in his testimony. As a result, there's really no emphasis to be placed on what defense counsel believes is an evasive answer on the part of the officer. So I would like to note that since counsel made it a point to make that statement. In addition, I do not believe there is any audio or video evidence. There was no evidence admitted at the hearing of an audio or video from the officer's arrest, so that has not been included as part of the record. I'm not aware that any such audio exists. Another issue that counsel is bringing up is the standard of review. With regard to probable cause, our Supreme Court in Hill in 2020 stated that probable cause deals with probabilities, not certainties. Hill went on to state that probable cause does not demand a showing that such a belief be correct or more likely true than false. So when I state there is a low burden for the officer to show here, I'm pulling that directly from Illinois Supreme Court precedent, not from any opinion that I may have. It's the law of this state. You can affirm on any basis in the record, and while it may be true that the officer did not testify, that he placed emphasis on the fact that this was a third-party rental agreement, we know that vehicles are used for trafficking. In this court, reviewing all of the evidence anew, which it is allowed to do under the current standard of review in these types of cases, you can consider that as a factor in support of the officer's probable cause determination. And with regard to the trial court's conclusions, the issue was the trial court made these conclusions without considering the totality of the circumstances. As I mentioned numerous times during my original argument, the court clearly took these facts in isolation and attempted to explain away each of them with possible innocent explanations, some of which were not even supported by the record, such as the fact that the defendant's person did not smell like cannabis, yet the court concluded that, well, it could have been the stale smell of cannabis on his clothing. Well, we know that's completely contrary to the evidence that was presented at the hearing. So that's a flaw in the court's reasoning, just like all of these other individual considerations were a flaw. You have to consider them all when you consider probable cause. With regard to the striggling case, that case doesn't, that case really doesn't affect this court's ruling because the facts were so different. In that case, there wasn't any additional evidence regarding the odor of burnt cannabis that the officer testified to. The officer detected the odor of burnt cannabis emitting from the vehicle, and the defendant told the officer that someone had smoked, quote, a long time ago. And that was the extent of the evidence. There wasn't the very strong odor of burnt cannabis. There wasn't evasive answers, which this court specifically noted in its ruling and striggling. The court stated that the defendant's demeanor did not show that he was hiding anything. Here, the defendant's demeanor does show that he was hiding something. And briefly, there were a few other cases that, so that case is inapplicable. There were a few other cases that defendants cited in his brief from other jurisdictions where cannabis has recently been legalized. One of them was Commonwealth v. Overmyer. I believe that's Massachusetts. That was raw cannabis was detected after an accident, and the court found that that didn't create probable cause. The next one was Pennsylvania v. Barr. But there were three occupants in the vehicle in that case, whereas the defendant was the only person in the vehicle in this case, and there were no other corroborating factors. And then finally, counsel cited People v. McKnight, which was out of Colorado. And that case involved a dog sniff, which we don't have in this case. But more importantly, Colorado is distinct from Illinois in one very important regard. The Colorado Constitution guarantees the citizens of that state the right to the recreational use of marijuana. In Illinois, we simply have a statute that says you can't smoke while driving, you can't possess a certain amount. So we're talking about a constitutionally protected right versus what is a fact that has several restrictions attached to it. And with that, if your honors have no other questions, I would ask this court to reverse the trial court's order and remand this matter for further proceedings. Counsel, I just have a question as to the statement you made regarding what the officer believed to be probable cause, not restricting this court or any court, that we can expand it and use other facts. You said that there was case law that the analysis allows for that. Is that new for you? By affirming on any basis in the record, is that what you're, is that my, that statement you're referring to? Yeah. I'm not sure that I cited case law that says that. It is a well-established principle that you can affirm on any basis in the record. Generally. Yeah. I would suggest that you can reverse on any basis in the record as well, indicating that if the trial court was wrong in not considering that fact, you could point to it in your analysis as justification for a reversal. We're not at right along on this stop. It's the officer's perspective. Correct. Are you suggesting that we could perceive things that the officer didn't perceive? You can't, you can't perceive them as the officer perceived them, but it's also important to note. This is like the least important factor in his determination. I don't even think this factor is required. I've included it in the brief because it is part of the record. And it is a piece of evidence that does tend to support the state's position on this argument. That's all. Thank you. Your honor. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a moment.